## 574.  MAIN v. SIMMONS.

1. While it is the duty of the court to construe a written contract, still a new trial will not be granted for failure to discharge this duty where the contract is submitted to the jury and properly construed by them. Especially is this true in a case where, if the contract had been properly construed by the court, the construction would have been adverse to the plaintiff in error and the result would have been the same as that reached by the jury in their verdict.

2. The writing in this case evidenced an entire and not a severable contract; and the purchaser was not compelled to accept any of the lot of jewelry, unless the entire lot was of the character and quality purchased by him.

3. The evidence fully sustaining the contention of the defendant that the greater portion of the lot of jewelry, which was the subject-matter of the contract, was worthless, the entire contract was avoided, the verdict in behalf of the defendant was authorized, and there was no error in refusing a new trial.

Complaint, from city court of Eastman—Judge Clements.  May 4, 1907.

Submitted October 29,—Decided November 11, 1907.

*W. M. Morrison,* for plaintiff.

*D. M. Roberts & Son,* for defendant.

RUSSELL, J.  The plaintiff in error, doing business as the American Jobbing Association, brought an action on a written contract for the purchase-price of a lot of jewelry therein described and ordered by the defendant.  The purchase-price of the lot of jewelry was $215.50.  The petition set out the contract, that the jewelry had been delivered to the defendant, and that the defendant had not availed himself of any of the three privileges set forth in the order or contract of purchase.  The order was as follows:

"American Jobbing Association, not incorporated, Chicago, Illinois.

### ORDER.

"Gentlemen:—Please ship me the assortment of goods described on the back of this order, in accordance with the terms hereon.

"Privilege No. 1.  Any article in this assortment which the purchaser has sold to his customer and which does not give reasonable satisfaction, considering price paid for it, may be returned, and we will refund the price originally paid or will repair or replace the article so failing to wear as it should, provided the article is returned to us by registered mail and the name and address of the dissatisfied customer is given.

"Privilege No. 2. Any piece of jewelry purchased from us, not finding ready sale after being properly displayed for 60 days, may be exchanged, dollar for dollar, at the purchase-price, for any other jewelry in our stock within one year from date of purchase. Should any of the goods in this order prove unsatisfactory in style, price, quality, finish, assortment, or selling quality, they must be returned for exchange as above provided, but can not be returned for credit. Repairs on jewelry free for one year.

"Privilege No. 3. Unsold goods can be returned for cash on the following terms: Should purchaser have sold less than three-fourths of the jewelry contained in this order at the end of one year from date of shipment, we agree to purchase from him, for cash, at the purchase-price, all unsold goods which he originally bought of us and which remain unsold at the end of this time. This agreement is made with the understanding and as a condition that the purchaser send us every three months between the first and tenth of the month an itemized list of all goods on hand and that he keep the goods displayed for sale one year. These conditions may be omitted by customers who are satisfied with their sales, and by so doing they will void no portion of this contract except this paragraph. We assist you. Attraction creates attention, attention fosters curiosity, and curiosity makes demand. Therefore, for the purpose of assisting the purchaser and creating a demand of all kinds of his goods, we furnish, with each full order only, 50 half pairs gents cuff buttons without charge and agree to mail 50 duplicates to fifty heads of families, the names and addresses of whom are to be furnished by the purchaser of this assortment by mail within ten days from date hereof, or vendors may, if they choose and find it convenient, if purchaser neglects to furnish list as agreed, obtain the list otherwise. An appropriate letter and a certificate good for the duplicate button will also be mailed and when the holder thereof had purchased any goods from the merchant equal to $5.00 in value the certificate becomes good and he will be given the duplicate button.

"Terms of Settlement. Long time if closed by acceptance. The amount of this order is payable in six equal installments, due two, four, six, eight, and twelve months from date of invoice, provided purchaser sends us within 15 days from date of shipment from our most convenient place of business his six acceptances for amounts

and time of above payments, payable to our order at Chicago, Ill. Liberal cash discount. If acceptances are not sent us as above terms are cash. Five per cent. discount if paid in full within 15 days from date of shipment.

### "Special Notice.

"No privileges herein granted will be allowed unless terms of sale are complied with and acceptance, if any, paid when due. Delivery to transportation company at our most convenient place of business is hereby conceded delivery to the purchaser. In consideration of the special terms and conditions of this order purchaser agrees not to countermand either before or after it is accepted by us. The representative of the American Jobbing Association is a soliciting agent only and has no authority to make agreements of any kind for that company. If any changes in the order are desired they must appear in writing hereon. I acknowledge that all the terms and conditions under which I desire to purchase the goods listed on this order appeared hereon. This order is given subject to acceptance by the American Jobbing Association.

Signature of purchaser,　　　　D. W. Simmons.

Post-Office,　　　　　　　　Eastman, Ga.

Nearest Express Office,　　　　Eastman, Ga.

Date 11/1905 .........................salesman.

"To insure long and pleasant business relations, misunderstanding must be guarded against. Purchasers will therefore please carefully read this order.

"Citizens Banking Company.

"*Original.* Order Itemized.

"Carefully read all the terms and conditions contained in this order.

"Salesmen are not authorized to receive money or goods from customers."

Following this order is the statement of the articles comprised in the assortment of jewelry and the price of each; the entire assortment aggregating $215.59.

The defendant denied all of the allegations of the plaintiff's petition, except as to the jurisdiction of the court and that he gave the order above quoted; and, for further answer, admitted that he purchased the lot of goods described in the order, but averred that

the plaintiff did not ship the goods he purchased as described in the order, but fraudulently substituted, in place of the goods ordered and described in the contract, a lot of cheap jewelry, of no value whatever and utterly unsalable. He further pleaded, that as soon as the goods reached him and he had an opportunity to examine them, he tendered back the jewelry to the plaintiff's attorney; that he still had on hand all the lot he had received; and he made a continuing tender. He admitted that he refused to sign the acceptance referred to in the petition and in his order, because he never received the articles described in the order, but, on the contrary, the articles sent were spurious and worthless, and were not the goods he had purchased from the plaintiff, described in said order. The testimony of the defendant in support of his plea was uncontradicted. He testified, that the plaintiff never shipped him the goods he ordered; that the goods shipped were brass and worth nothing at all; that the goods he ordered, as described in the contract, would have been salable. He further testified, that as soon as he saw the goods he received, he notified plaintiff that the goods were subject to his order and he had not sold or exposed for sale any of the articles included in the order. The defendant further testified, on cross-examination, that he had no complaint to make of the articles included in the lot of jewelry which were not claimed to be gold; that his only complaint related to the goods described in the order as gold filled, or rolled-gold filled. He admitted that some of the articles shipped were as ordered, but testified that two thirds of the goods ordered were to be gold filled, and that he refused the jewelry because this portion of the lot of jewelry was not as ordered. The jury rendered a verdict in favor of the defendant. Plaintiff moved for a new trial, upon the grounds, that the verdict is contrary to law and evidence; that the court erred in submitting to the jury the question whether the contract upon which the plaintiff's action is based is an entire or a severable contract; that the court erred in not construing said contract to be a severable one, and not charging the jury that the plaintiff was at least entitled to recover the purchase-price and value of the lot of goods embraced and described in said contract which are not described as being gold filled or rolled-gold filled.

1. The court erred in submitting the construction of the contract to the jury. "The construction of a contract is a question

for the court." Civil Code, § 3672. This is the general rule, and it is only in the case of ambiguity that parol evidence is admissible or that the meaning of the contract can be submitted to the jury. But while it is the duty of the court to construe a written contract, still failure to discharge this duty is immaterial if the jury by their verdict properly construe such contract. As we have already held in *Moss Manufacturing Co.* v. *Carolina Portland Cement Co.,* 1 *Ga. App.* 232, this is especially true where it appears that the proper construction of such contract would be adverse to the contention of the complaining party. And the same doctrine was laid down in *Tilton* v. *Butts, 78 Ga.* 30, where the court held that "it is the duty of the court to construe a written contract, but if he had properly construed the contract in this case it would not have benefited the plaintiff in error, and the result must have been the same as that reached." The first assignment of error, therefore, must be considered solely with a view to the question whether the jury properly construed the contract, and, having so construed it, whether their verdict was the proper conclusion in the case.

2. The real point in the case, then, is whether the contract is entire or severable; and the counsel for both parties concede this to be the controlling issue. We hold that the order for the lot of jewelry, which we have quoted above, when signed by the purchaser and accepted by the vendor, evidences an entire contract of purchase of the lot of jewelry identified and described in the bill of particulars, but summarized in the gross sum for which suit was brought and based upon the written order. The privileges mentioned were to be enjoyed only subsequently to the completion of the real contract of purchase and delivery of the goods, and after the payment of the purchase-price. That did not in any way rebut the evident intention of both parties to create an entire contract. This being true, the purchaser, when he discovered that there had been palmed off on him spurious articles more than for two thirds of the amount of the entire purchase, which bore no comparison in value to the articles he had ordered, was at perfect liberty to consider the contract as avoided by the seller, and to reject, as he did, the entire lot. "Where the contract is entire, performance by the party undertaking the contract is a condition precedent to a recovery against the other party upon the contract."

*Hill* v. *Balkcom,* 79 *Ga.* 444. See Cutter *v.* Powell, 2 Smith's. Leading Cases, Part 1, 1.

3. Though the court should have construed the writing to be an entire contract, the verdict of the jury properly construed it; the evidence for the defendant fully authorized him to reject the entire lot of jewelry, and fully warranted the finding of the jury in his favor.                                     *Judgment affirmed.*