## 63335, 63336. COLONIAL PENN INSURANCE COMPANY v. HART et al.; and vice versa.

CARLEY, Judge.
During the early morning hours of June 23, 1978, Gary W. Hart, a minor, was walking on a public road which ran beside the residence of Edward and Ethel Rice (the Rices). The minor was struck with pellets from a shotgun when Mr. Rice stepped from his house and intentionally discharged the weapon. Subsequently, Gary Hart and his father (the Harts) filed a civil action against the Rices seeking to recover for personal injuries and damages allegedly resulting from the incident.

Colonial Penn Insurance Company (Colonial Penn) had issued

the Rices a home owner's liability policy which was in effect at the time of the shooting. Colonial Penn brought the instant declaratory judgment action naming both the Rices and Harts as defendants and seeking a judgment declaring lack of coverage under the following exclusionary provision of the policy: "This policy does not apply . . . to bodily injury . . . which is either expected or intended from the standpoint of the Insured."

In their responsive pleadings to the complaint, the Harts asserted cross-claims against the Rices for damages allegedly resulting from the complained-of incident. The Harts also counterclaimed against Colonial Penn alleging liability under the policy issued to the Rices. By order dated February 16, 1981, the trial court granted Colonial Penn's motion to dismiss the counterclaims. By order dated April 7, 1981, the trial court granted the Rice's motion to dismiss the cross-claims.

After discovery, the matter was submitted to a jury and a verdict in favor of the Rices and the Harts and against Colonial Penn was returned. In Case No. 63335 Colonial Penn has filed a notice of appeal from the judgment entered on the jury verdict. In Case No. 63336 the Harts appeal from the trial court's orders dated February 16, 1981, and April 7, 1981, dismissing their counterclaims and cross-claims, respectively. The Harts also appeal from the judgment entered on the jury verdict insofar as the judgment failed to include a provision that Colonial Penn would be liable for any amount adjudicated against the Rices in the tort action.

### Case No. 63335

1. "Since the case has already been tried, the enumeration of error complaining of the denial of [Colonial Penn's] motion for summary judgment is not meritorious. [Cits.]" *Mullinax v. Singleton,* 139 Ga. App. 704, 705 (1) (229 SE2d 518) (1976). Accord, *Ga. Farmers' Market Auth. v. Dabbs,* 150 Ga. App. 15, 16 (1) (256 SE2d 613) (1979).

2. Colonial Penn enumerates as error the denial of its motion for a directed verdict. The evidence presented at trial showed that the Rices' home had been the focal point of several past acts of vandalism and malicious mischief. On the night in question, Mrs. Rice was apparently awakened by strange noises and she awakened Mr. Rice. Upon peering out of the garage door, Mr. Rice observed Gary Hart "thr[ow] a rock against the house." Mr. Rice then stepped from the garage, confronted Gary Hart, and as the minor turned to run, Mr. Rice intentionally discharged his shotgun twice. The first shot was fired "straight up in the air." Realizing that a shot directly overhead might strike a power line leading to his house, Mr. Rice lowered the

shotgun to "about a forty-five degree angle" and fired the second shot in the direction in which Gary Hart had run but "way up over his head up in the trees." Mr. Rice testified that his sole purpose in firing the shotgun was to scare Gary Hart and that he did not intend to injure or harm the boy in any manner.

Colonial Penn predicated its motion for directed verdict upon the fact that Mr. Rice intentionally fired the shotgun. Colonial Penn urges that this intentional act of its insured brought the exclusionary provision into play thereby barring coverage under the policy and, as there was no conflict in the evidence, judgment in its favor was demanded. However, the issue in the instant case was not whether Mr. Rice intentionally fired the shotgun. This fact is uncontroverted. Rather, "[t]he *only* issue . . . was whether the [bodily injury] was 'either expected or intended from the standpoint of [Mr. Rice]' within the plain and unambiguous language of the policy. [Cit.]" *Transamerica Ins. Co. v. Thrift-Mart,* 159 Ga. App. 874, 881 (285 SE2d 566) (1981).

The general rule which appears to have developed through judicial interpretation and application of exclusionary provisions such as the one in the instant case is that they are inapplicable if and only if the insured acts without the intent or expectation of causing any injury, however slight. Conversely, such an exclusion is applicable if the insured acts with the intent or expectation that bodily injury occur, even if the actual, resulting injury is different either in kind or magnitude from that intended or expected. See generally, Annot. 2 ALR3d 1238, 1243 § 4 (1965). Thus, there is a recognized distinction between intentional and unintentional results of intentional acts. "Intent" is defined in *Restatement, Torts* 2d, § 8A (1965) "to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." "On the other hand, the mere knowledge and appreciation of a risk, short of a substantial certainty, is not the equivalent of intent." Prosser, The Law of Torts, p. 32 § 8 (4th ed. 1971).

In the instant case, Mr. Rice testified that he had no intention of harming Gary Hart, but merely fired the shotgun in order to frighten him. Apparently, the jury believed that Mr. Rice neither intended or expected bodily injury to result from his otherwise intentional acts. The evidence certainly did not demand a finding that Mr. Rice intended to cause the bodily injuries or that he knew the injuries were substantially certain to follow from his actions. Accordingly, the trial court did not err in denying Colonial Penn's motion for a directed verdict.

3. Colonial Penn next asserts that the trial court erred in

charging the jury as to certain legal principles applicable to the construction of the insurance policy. "Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity remains. [Cits.] Insurance policies being contracts, the decisions have held that the matter of construction is for the court. [Cits.]" *American Cas. Co. v. Crain-Daly,* 129 Ga. App. 576, 579 (200 SE2d 281) (1973). "The rules of law set forth in the Code with respect to the construction of contracts are framed for the guidance and direction of the courts. Except in cases where the meaning of obscurely written words is involved, and where there is evidence tending to show that the meaning of such words was differently understood in one way or another by the parties to the contract, it is improper to submit to the jury any question as to the construction of the contract. Except in such cases it is clearly error and improper for the court to give the jury any instruction with regard to the manner in which the contract should be construed. [Cits.]" *California Ins. Co. v. Blumburg,* 101 Ga. App. 587, 591-592 (115 SE2d 266) (1960).

As previously noted, "[t]he only issue in the instant case was whether the [bodily injury] was 'either expected or intended from the standpoint of the Insured' within the plain and unambiguous language of the policy. [Cit.] In other words, the only issue in the case was whether the actions of the insured did or did not fall within the clear and unambiguous terms of the policy exclusion. There was no issue in the case concerning the meaning of the exclusion itself. Thus, " '(b)ecause there (was) no issue in the case sub judice as to the meaning of obscurely written or ambiguous words in the policy, the court's charge was erroneous.' [Cit.]" *Transamerica Ins. Co. v. Thrift-Mart,* 159 Ga. App. at 881, supra. Under the facts of the instant case we are unable to say that the error was harmless. Compare *South Ga. Trust Co. v. Neal,* 174 Ga. 24 (2) (161 SE 815) (1931).

4. Colonial Penn contends that the trial court erred in giving certain instructions to the jury on the law of negligence which were not adjusted to the evidence. " 'An instruction containing a correct legal principle, though inappropriate to the case, if not prejudicial to the contention of the losing party, affords no sufficient reason for granting a new trial.' [Cit.]" *Rolan v. Rittenhouse,* 107 Ga. App. 769, 770 (3) (131 SE2d 112) (1963). Even assuming that the charges on negligence were not warranted by the evidence, Colonial Penn has failed to demonstrate any manner in which it was harmed by such instructions. Accordingly this enumeration is without merit.

5. Remaining enumerations of error not specifically addressed have been considered and found to be without merit.

### Case No. 63336

6. Colonial Penn moved to dismiss the Harts' counterclaims against it on the grounds that they failed to state a claim upon which relief could be granted and that the counterclaims were premature inasmuch as the liability of its insured had not yet been established. The Rices moved to dismiss the Harts' cross-claims on the grounds that they failed to state a claim upon which relief could be granted and that the relief sought by the cross-claims was not maintainable in a declaratory judgment action. In Case No. 63336, cross-appellants, the Harts, enumerate as error the granting of these motions.

"The purpose of the Declaratory Judgment Act [Ga. L. 1945, p. 137; 1959, p. 236 (Code Ann. § 110-1101 et. seq.)] 'is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, . . .' [Cits.]" *Total Vending Serv. v. Gwinnett County,* 153 Ga. App. 109, 111 (264 SE2d 574) (1980). Unquestionably, Colonial Penn, under the facts of this case, had the right to utilize the declaratory judgment procedure to seek judicial determination of its obligations under the liability policy and its duties, if any, to provide a defense for its insured in the pending tort action. See *LaSalle Nat. Ins. Co. v. Popham,* 125 Ga. App. 724, 728 (188 SE2d 870) (1972); *Southern Trust Ins. Co. v. Eason,* 134 Ga. App. 827 (216 SE2d 667) (1975); *St. Paul Fire &c. Ins. Co. v. Johnson,* 216 Ga. 437 (117 SE2d 459) (1960). The question presented for resolution is whether the issues in the pending tort action may properly be injected into the instant declaratory judgment action through counterclaims and cross-claims.

Cross-appellants cite no Georgia authority to substantiate their contentions that the trial court erred in dismissing their counterclaims and cross-claims. However, it is urged that pleadings in declaratory judgment procedure are controlled by the Civil Practice Act, and that the counterclaims and cross-claims were properly brought under Code Ann. § 81A-113 (a) and (g) respectively. See *Southeastern &c. Co. v. State Farm &c. Co.,* 118 Ga. App. 861 (1) (165 SE2d 887) (1968).

The pleading of a compulsory counterclaim is governed by Code Ann. § 81A-113 (a) which requires that the pleader state "any claim which at the time of serving the pleading the pleader has against an opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . But the pleader need not state the claim if (1) at the time the action was commenced the claim was subject of another pending action . . ." The subject matter of the declaratory judgment action involved the liability or non-liability of Colonial Penn under the policy issued to the Rices.

The Harts' counterclaims sought an adjudication of the claims against the Rices based upon the injuries allegedly resulting from the shooting incident and also recovery of damages for the alleged injuries directly from Colonial Penn under the insurance policy. Thus, the subject matter of the counterclaim was the alleged tort liability of Mr. Rice arising from the firing of the shotgun and the causing of the injuries. "The liability under the policy and the liability for negligence are indeed two separate transactions." Borchard, Declaratory Judgments, p. 652 (2 ed. 1941). It is apparent that the insurer's contractual liability under a given set of facts and the insured's tort liability are fundamentally distinct issues. Under our analysis, these counterclaims were not properly maintainable as compulsory counterclaims for the reason that the claims asserted therein did not arise out of the transaction or question presented by the action for declaratory judgment. See St. Paul Fire and Marine Ins. Co. v. Mannie, 91 F.R.D. 219 (D.N.D. 1981). Moreover, the Harts' counterclaims are not compulsory for the further reason that at the time the instant action was commenced the tort claims were the subject of another pending action.

Neither were the Harts' claims against Colonial Penn maintainable as permissive counterclaims. "An insurer may not be joined as a party defendant with the insured and sued directly, [cits.], unless a judgment has previously been obtained against the insured which is unsatisfied or liability has otherwise been fixed, [cits.], or unless a provision in the policy permits it, [cit.], or unless specifically permitted by statute as in the case of common carriers and contract motor carriers [Cits.]" *Seaboard C. L. R. Co. v. Freight Del. Ser.,* 133 Ga. App. 92 (3) (210 SE2d 42) (1974). "In the absence of policy provisions to the contrary, one who suffers injury is not in privity of contract with the insurer under a liability insurance policy and cannot reach the proceeds of the policy for the payment of his claim by an action directly against the insurer. [Cit.]" *Public Nat. Ins. Co. v. Wheat,* 100 Ga. App. 695, 697 (1) (112 SE2d 194) (1959). The insurance policy in question contained a "no action provision" specifically stating that no action could be brought against Colonial Penn until the amount of its insured's liability has been finally determined either by judgment or by written agreement. Accordingly, neither statute nor the policy permits the Harts to bring a direct action by way of counterclaim against Colonial Penn. Nor do we believe that Colonial Penn waived its right to the protection afforded it under Georgia case law and the policy by instituting a declaratory judgment action against both the insured and the injured third party. But see, Plains Ins. Co. v. Sandoval, 35 F.R.D. 293 (D. Colo. 1964). Had Colonial Penn not joined the Harts as co-defendants

in the instant action, any judgment obtained would not have been binding on them and would have subjected Colonial Penn to the possibility of further litigation on the same issue. *Davis v. National Indemnity,* 135 Ga. App. 793 (1) (219 SE2d 32) (1975); Code Ann. §. 110-1106. For the foregoing reasons, we conclude that the trial court did not err in dismissing the Harts' counterclaims against Colonial Penn.

The question remains as to whether the trial court erred in dismissing the Harts' cross-claims against the Rices seeking a determination of their claims for damages allegedly resulting from the shooting incident. Cross-claims are authorized where a party states against a co-party a claim "arising out of the transaction or occurrence that is the subject matter of either the original action or a counterclaim therein . . ." Code Ann. § 81A-113(g). It has already been determined that the tort liability claim does not arise out of the transaction or occurrence that is the subject matter of the declaratory judgment action. While the tort liability claim does arise out of the transaction or occurrence that is the subject matter of the counterclaim, the counterclaim cannot be maintained for the reasons set forth above. Accordingly, the tort cross-claims against the Rices did not meet the test set forth in Code Ann. § 81A-113 (g). Moreover, the Harts' claims for alleged damages as a result of the shooting incident are pending in another action. "[A] declaratory judgment action [cannot] perform the function of a bill in equity seeking to enjoin pending litigation and praying for a consolidation of actions for the purpose of avoiding a multiplicity of suits . . ." *State Farm v. Hillhouse,* 131 Ga. App. 524, 527 (5) (206 SE2d 627) (1974). Thus, we conclude that the trial court did not err in dismissing the Harts' cross-claims. See American Fidelity Fire Ins. Co. v. Hood, 37 FRD 17 (E.D.S.C. 1965); Allstate Ins. Co. v. Daniels, 87 FRD 1 (W.D. Okla. 1978); St. Paul Fire and Marine Ins. Co. v. Mannie, 91 FRD 219, supra.

7. We find no merit in cross-appellants' contention, unsupported by any authority, that the judgment was improper inasmuch as it failed to provide that "Colonial Penn will be liable to the Rices for all amounts ultimately adjudicated against the Rices, up to the policy limits." The only issue in the instant declaratory action was whether coverage was afforded under the policy. The judgment correctly reflected the jury's determination as to this issue.

8. For the reasons discussed in Division 3, a new trial must be granted in Case No. 63335. For the reasons discussed in Divisions 6 and 7, the judgment in Case No. 63336 is affirmed.

*Judgment in Case No. 63335 reversed. Judgment in Case No. 63336 affirmed. Quillian, C. J., and Shulman, P. J., concur.*

DECIDED MAY 12, 1982.

*Ronald R. Womack,* for appellant.
*Frank M. Gleason, Jon Bolling Wood,* for appellees.